IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CIVIL ACTION NO: 7:13-cv-224

CARMEN SWASO,                                )
                                             )
         Plaintiff,                          )
                                             )
         v.                                  )      **COMPLAINT**
                                             )      **Jury Trial Demanded**
ONSLOW COUNTY BOARD                          )
OF EDUCATION, PAMELA THOMAS,                 )
FRED HOLT, MARGARET BROWN,                   )
BROCK RIDGE, JEFFREY L. BROWN,               )
LINA PADGETT-PARKER, RONNIE                  )
ROSS, MARY ANN SHARPE,                       )
EARL TAYLOR and PAUL WIGGINS,                )
in their individual and official capacities, )
and DR. DONNA LYNCH, in her                  )
individual and official capacity,            )
                                             )
         Defendants.                          )
_____)

## I. INTRODUCTION AND JURISDICTION

This is an action under 42 U.S.C. § 1983 against the Onslow County Board of Education and Dr. Donna Lynch, Principal, in her individual and official capacities. This is also an action against Donna Lynch in her individual capacity under 42 U.S.C. 2000e *et seq.*, Section 1981 of the Civil Rights Act of 1866. Plaintiff alleges that she was discriminated against in the terms and conditions of her employment based upon her race.

## II. PARTIES

1.  Plaintiff is a Hispanic African American who resides in Onslow County, North Carolina.

2. Defendant, Onslow County Board of Education, is a public entity responsible for providing educational services to the public in Onslow County.

3. Defendant, Dr. Donna Lynch, upon information and belief, is citizen and resident of Onslow County, North Carolina, and is employed by the Onslow County Board of Education as a principal.

4. Defendant, Pamela Thomas, upon information and belief, is a citizen and resident of Onslow County, North Carolina, and was a member of the Onslow County Board of Education during the relevant time period in Plaintiff's Complaint.

5. Defendant, Fred Holt, upon information and belief, is a citizen and resident of Onslow County, North Carolina, and is a former elected Board member of the Onslow County Board of Education and was a member during the relevant time period in Plaintiff's Complaint.

6. Defendant, Margaret Brown, upon information and belief, is a citizen and resident of Onslow County, North Carolina, and is a former elected Board member of the Onslow County Board of Education and was a member during the relevant time period in Plaintiff's Complaint.

7. Defendant, Brock Ridge, upon information and belief, is a citizen and resident of Onslow County, North Carolina, and is a Board member of the Onslow County Board of Education during the relevant time period in Plaintiff's Complaint.

8. Defendant, Jeffrey L. Brown, upon information and belief, is a citizen and resident of Onslow County, North Carolina, and is a Board member of the Onslow County Board of Education during the relevant time period in Plaintiff's Complaint.

9. Defendant, Lina Padgett-Parker, upon information and belief, is a citizen and resident of Onslow County, North Carolina, is a Board member of the Onslow County Board of Education during the relevant time period in Plaintiff's Complaint.

10. Defendant, Ronnie Ross, upon information and belief, is a citizen and resident of Onslow County, North Carolina, is a former elected Board member of the Onslow County Board of Education and was a member during the relevant time period in Plaintiff's Complaint.

11. Defendant, Mary Ann Sharpe, upon information and belief, is a citizen and resident of Onslow County, North Carolina, is a Board member of the Onslow County Board of Education during the relevant time period in Plaintiff's Complaint.

12. Defendant, Earl Taylor, upon information and belief, is a citizen and resident of Onslow County, North Carolina, and a Board member of the Onslow County Board of Education during the relevant time period in Plaintiff's Complaint.

13. Defendant, Paul Wiggins, upon information and belief, is a citizen and resident of Onslow County, North Carolina, and a Board member of the Onslow County Board of Education during the relevant time period in Plaintiff's Complaint.

### III. FACTS

14. Plaintiff was employed by Defendant as a schoolteacher and was employed at the Jacksonville High School as a Spanish teacher.

15. At all times during her employment with the Onslow County Board of Education, Plaintiff performed her duties in a satisfactory manner. She was a highly respected high school teacher and enjoyed good relations with parents, students and other faculty members.

16. On October 17, 2010, a white female Jacksonville High School student posted a request on her facebook page in response to another student making a threat against the principal, Donna Lynch. The white female student made the following request "Make sure you shoot Ms. Swaso." Both of these students were white students enrolled at Jacksonville High School. The student who made the threat against Dr. Lynch was a white male.

17. Dr. Lynch was made aware of the threat against Plaintiff on October 17, 2010 but failed to advise Plaintiff of the threat until October 19, 2010.

18. An African American student who was aware of the threat posted on the facebook page reported what he learned to other students. As a result, even though he was in no way involved in the threats, he was reported to the local police officers by Dr. Lynch. Neither of the white students who actually made the threats was reported to the police by Dr. Lynch. The African American student, who revealed the threats, was arrested and suspended from school for 5 days.

19. The alleged threat was supposed to take place on October 18, 2010.

20. Plaintiff reported to work on October 18, 2010 at her usual time. Plaintiff's classroom was located at the far end of a building on the opposite end of the campus from the school office. When Plaintiff arrived at school, she noticed that there were three police patrol cars parked across Henderson Drive, opposite the front of the open campus of Jacksonville High School.

21. Plaintiff checked into the school office and saw no school personnel. She then proceeded to her classroom. Plaintiff's classroom was located near the exit of the 6th

building at the far end of campus. Throughout the day, Plaintiff's classroom was easily accessible through the entrance and exit door of that building.

22. During the course of the school day on October 18, 2010, some faculty members were told to secure their classrooms. Plaintiff was told not to cover the window on her classroom door and to leave the door unlocked, but to close the blinds.

23. Plaintiff noticed that a large number of students were absent from her classroom and one student was pulled from her class by his mother. Plaintiff later learned that School Board members also removed their children from the school.

24. Plaintiff was unaware of the nature of the threat despite having asked for particulars from the Assistant Principal, Angela Garland. At no time on October 18, 2010, did Plaintiff receive any specific information about the nature of the threat.

25. Upon information and belief, members of the Jacksonville High School administration, as well as the school Superintendent and the members of the School Board were aware that a specific threat had been made to the life of Plaintiff. However, no action was taken to alert the Plaintiff that a specific threat was made against her.

26. Upon returning to school on October 19, 2010, Plaintiff first learned that she was the subject of the threat. Dr. Lynch showed her the facebook page that stated: "Make sure you shoot Ms. Swaso." This was the first time that Plaintiff had heard of the threat and was concerned that, on numerous occasions during the previous day, no one had ever said anything about the threat to her, nor did anyone check on her during the day. Further, the Plaintiff was told that although there was a considerable presence of law enforcement officers in and around the school office and cafeteria of Jacksonville

High School on October 18, 2010, no police officers were around or in the building where Plaintiff was located at the far end of campus about a quarter of a mile away.

27. On October 20, 2010, Dr. Lynch suggested that Plaintiff, Dr. Lynch, and the white female student who requested the killing, sit down so that the student could apologize to the Plaintiff. Dr. Lynch also asked the Plaintiff to allow the white female student to remain in her classroom. Plaintiff responded that she did not want to have the female student who made the threat against her remain in her classroom. Dr. Lynch's responded that she had no place else to put the student.

28. On Wednesday, October 20, 2010, Dr. Kathy Spencer, Superintendent of Onslow County Schools, came to Jacksonville High School to meet with the teachers at their monthly meeting. She thanked the faculty for how they handled the crisis of October 18, 2010. She did not speak to Plaintiff or acknowledge her.

29. On October 21, 2010, Dr. Lynch again approached the Plaintiff in the hallway insisting that she sit down and allow the white female student to apologize to her and return to her classroom. Plaintiff emphatically rejected that idea. Dr. Lynch eventually assigned the white female student to a classroom directly across the hall from that of the Plaintiff.

30. At all times on October 18, 2010, there was a strong presence of police officers around the office building housing the principal's office. No level of police protection was at the building where Plaintiff taught. The female student who made the threat against the Plaintiff was given a three-day out of school suspension. The student who threatened Dr. Lynch was placed in the Onslow County Learning Center for the

remainder of the year. The African American student, who reported seeing the threats on facebook, was arrested and given 5 days out of school suspension.

31. As a result of learning of the threat and the school's apparent disregard for her safety, Plaintiff experienced sleeplessness, nervousness, heart palpitations, sweating, chills, high blood pressure, and insomnia. She consulted with a physician and was taken out of school for five days due to her high blood pressure and the palpitations.

32. On or about October 27, 2010, Plaintiff had a conversation with the Assistant Principal, Angela Garland, who told her that despite school officials being aware of the threat before October 18, 2010, that she did not send an e-mail, or otherwise warn her, because they were afraid that the information would be forwarded to other teachers. As Assistant Principal Angela Garland and Plaintiff were talking, Dr. Lynch came in and told Plaintiff that the African American student who reported the threats was to blame because he had told about the incident. She went on to say that the white students were only playing a virtual game and that there was never a threat.

33. When Plaintiff asked Dr. Lynch why she did not notify her or her husband about the threat, Dr. Lynch replied, "By law, I do not have to tell you or your husband anything."

34. Beginning in December 2010, Plaintiff's blood pressure and palpitations began to increase to a dangerous level and she had to be out of work from December 2, 2010 through December 17, 2010. During her leave, Plaintiff kept in touch with the substitute teacher, providing all work and lesson plans, grading papers and preparing quizzes and final exams.

35. Plaintiff was released by her doctor to return to work on January 10, 2011 with only one restriction of "no prolonged standing." Plaintiff was not allowed to return to work despite this limited restriction. Plaintiff believes that others have been allowed to return to work with more serious limitations. Plaintiff experienced severe emotional distress as a result of the treatment which she received from the Onslow County Board of Education, Dr. Lynch and Dr. Spencer.

36. Plaintiff was treated differently than a white employee of the school system with regard to measure taken to ensure her security and safety on October 18, 2010.

## IV.     CLAIMS FOR RELIEF
### First Cause of Action – Race Discrimination (Section 1983 and Section 1981)

37. Plaintiff realleges and incorporates all preceding paragraphs by reference.

38. Defendant Onslow County Board of Education owes its employees the duty of care to ensure their safety and well being. Defendants were put on notice of the potential threat to the life of the Plaintiff but took no steps to advise her of that threat or to provide any visible presence of law enforcement in the vicinity of her work area. She was allowed to work the entire day but was not provided any safety or protection. Her white counterpart, another employee of the Onslow County Board of Education, was located in a building of the school which had a heavy police presence from the beginning of the day through the end of the school day.

39. Defendant Onslow County Board of Education discriminated against the Plaintiff on the basis of her race with respect to the terms and conditions of her employment.

40. Defendant, Dr. Donna Lynch, is an employee and agent of Defendant Onslow County Board of Education. Defendant discriminated against Plaintiff in that she

did not require police protection for the building in which the Plaintiff was teaching on October 18, 2010. Further, Lynch, having prior knowledge of the threat did nothing to alert the Plaintiff that she was the subject of the threat. Lynch's behavior and action in insisting that the Plaintiff allow the student who had threatened her life to continue in her classroom was a violation of School Violence Prevention Act. She further insisted that the Plaintiff accept an apology from this student.

41. After Plaintiff's refusal to allow the student to return to her classroom, Lynch placed the student in a classroom right across from the Plaintiff's.

42. During the course of Plaintiff's employment after October 18, 2010, the student's presence in close proximity to the Plaintiff felt like a continuing threat to Plaintiff. No action was taken when this threatening behavior, which included staring at the Plaintiff in a threatening manner, was reported to officials.

43. Lynch displayed a discriminatory animus when she disciplined the African American student who reported the threats and when she further reported him to the Jacksonville Police Department. Lynch took less drastic action towards the white female student who threatened the Plaintiff. She reported neither of the white students who had made actual threats to the Jacksonville Police Department. Lynch's actions towards the Plaintiff were motivated by race discrimination.

44. Defendant Lynch violated Plaintiff's rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1981.

45. Defendants' actions have created harm to the Plaintiff and have damaged her in excess of $10,000.00

## V. SECOND CAUSE OF ACTION –
### Intentional Infliction of Emotional Distress

46. Plaintiff realleges and incorporates all preceding paragraphs by reference.

47. Defendants' actions as outlined above were undertaken intentionally in that Defendants knew or should have known that their conduct would offend and humiliate the Plaintiff.

48. Defendants' conduct was intolerable and outrageous to society's expectation of employers.

49. Emotional distress is a reasonable, foreseeable result of the treatment received by the Plaintiff which caused Plaintiff emotional severe emotional distress.

50. Defendants, by and through its agent, Dr. Donna Lynch, engaged in behavior which was designed to inflict emotional distress which, and in fact, did inflict emotional distress upon the Plaintiff. Plaintiff was unaware of the fact that she had been the subject of a threat by the students. Despite the fact others were aware of the fact that she was the subject of the threat, was never told that by school officials. Even though Plaintiff was not physically harmed on October 18, 2010, she was subjected to behavior by Lynch which, in fact, caused her emotional distress. When Plaintiff sought to talk to Lynch about the matter, Lynch in a demeaning way told the Plaintiff that she did not have to tell her about the threat. Lynch further insisted, on at least two occasions, that the Plaintiff allow the student who had made the threat into her classroom.

51. The student who made the threat against her life was only given three days suspension. The student who made the threat against the life of Lynch was assigned to the Onslow County Learning Center. Lynch never had to confront this student on a daily basis again. However, Plaintiff was forced to have to interact with the student who had

written on the facebook page "Make sure you shoot Ms. Swaso." Plaintiff's continued forced interaction with this student led her to have physical and emotional reactions which eventually disabled her from working as a teacher in the Onslow County School System. Plaintiff had to seek medical advice, both for physical and emotional responses to the behavior of Dr. Lynch.

52. As a direct result of Defendants' actions, Plaintiff suffered emotional distress that caused great anxiety and disability. Defendants' actions were undertaken willfully, wantonly, and with reckless disregard for the Plaintiff's rights. Plaintiff has suffered damages as a result of the behavior, including total disability based on both physical and emotional injuries.

## VI. JURY TRIAL DEMANDED

53. Plaintiff hereby demands a trial by jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the harassment and retaliation alleged herein be remedied in full and that the Court, after a jury trial:

1. Declare the actions complained of herein to be illegal;

2. Issue an injunction enjoining the Defendants, its agents, its employees, successors, attorneys and those acting in concert or participation with Defendants and at its direction, from engaging in the unlawful practices set forth herein and any other employment practice shown to be in violation of 42 U.S.C. §§ 1983 and 1981;

3. Award Plaintiff compensatory damages, including damages for mental anguish, pain and suffering, harm to Plaintiff's economic relations and opportunities,

loss of earnings with cost of living adjustments, interest, fringe benefits, and retirement benefits;

  4.  Award Plaintiff her costs and expenses in this action, including reasonable attorneys' fees, costs and other litigation expenses; and

  5.  Grant such other and further relief as may be just and necessary to afford complete relief to Plaintiff.

This 16th day of October, 2013.

        s/ Geraldine Sumter
        N.C. Bar No: 11107
        Ferguson, Chambers & Sumter, P.A.
        741 Kenilworth Avenue, Suite 300
        Charlotte, North Carolina 28204
        Telephone: 704-375-8461
        Facsimile: 704-334-5654
        E-mail: gsumter@fergusonsumter.com

        Attorney for Plaintiff