IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CIVIL ACTION NO: 7:13-cv-224

| | |
|---|---|
| CARMEN SWASO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **PLAINTIFF'S** |
| ) | **MEMORANDUM IN OPPOSITION** |
| ONSLOW COUNTY BOARD ) | **TO DEFENDANTS' MOTION TO** |
| OF EDUCATION, PAMELA THOMAS, ) | **DISMISS IN LIEU OF ANSWER** |
| FRED HOLT, MARGARET BROWN, ) | |
| BROCK RIDGE, JEFFREY L. BROWN, ) | |
| LINA PADGETT-PARKER, RONNIE ) | |
| ROSS, MARY ANN SHARPE, ) | |
| EARL TAYLOR and PAUL WIGGINS, ) | |
| in their individual and official capacities, ) | |
| and DR. DONNA LYNCH, in her ) | |
| individual and official capacity, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**NOW COMES** Plaintiff, Carmen Swaso, (hereinafter "Plaintiff"), by and through the undersigned, and hereby submits this Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint.

I. **STATEMENT OF THE CASE**

This is an action under 42 U.S.C. § 1983 against the Onslow County Board of Education and Dr. Donna Lynch, Principal, in her individual and official capacity. This is also an action against Donna Lynch in her individual capacity under 42 U.S.C. 2000e *et seq.*, Section 1981 of the Civil Rights Act of 1866. Plaintiff alleges that she was discriminated against in the terms and conditions of her employment based upon her race. Plaintiff's Complaint in this action was filed on October 16, 2013 for employment discrimination based on race and intentional infliction of

emotional distress. On November 1, 2013, Plaintiff filed an Amended Complaint adding Defendant Dr. Kathy Spencer, Superintendent of Onslow County Schools.

Defendants filed a Motion to Dismiss Plaintiff's Complaint in lieu of an answer on April 2, 2014. Plaintiff files this memorandum in response to Defendants' Motion to Dismiss.

## II. STATEMENT OF THE FACTS

Plaintiff is a Hispanic African American who resides in Onslow County, North Carolina. She was employed by Defendants as a schoolteacher and was employed at the Jacksonville High School as a Spanish teacher. Compl. ¶ 15. At all times during her employment with the Onslow County Board of Education, Plaintiff performed her duties in a satisfactory manner. Compl. ¶ 16. She was a highly respected high school teacher and enjoyed good relations with parents, students and other faculty members. *Id.*

On October 17, 2010, a white female Jacksonville High School student posted a request on her Facebook page in response to a white male student making a threat against the principal, Donna Lynch. *Id.* The white female student made the following request "Make sure you shoot Ms. Swaso." *Id.* Both of these students were white students enrolled at Jacksonville High School. *Id.* The student who made the threat against Dr. Lynch was a white male. *Id.* Dr. Lynch was made aware of the threat against Plaintiff on October 17, 2010 but failed to advise Plaintiff of the threat until October 19, 2010. Compl. ¶ 18.

An African American student who was aware of the threat posted on the Facebook page reported what he learned to other students. Compl. ¶ 19. As a result, even though he was in no way involved in the threats, the African American male student was reported to the local police officers by Dr. Lynch. *Id.* Neither of the white students who actually made the threats was reported to the police by Dr. Lynch. *Id.* The African American student, who revealed the

2

threats, was arrested and suspended from school for 5 days. *Id.* The attack was supposed to take place on October 18, 2010. Compl. ¶ 20.

Plaintiff reported to work on October 18, 2010 at her usual time. Compl. ¶ 21. Plaintiff's classroom was located at the far end of a building on the opposite end of the campus from the school office. *Id.* When Plaintiff arrived at school, she noticed that there were three police patrol cars parked across Henderson Drive, opposite the front of the open campus of Jacksonville High School. *Id.* Plaintiff checked into the school office and saw no school personnel. Compl. ¶22. She then proceeded to her classroom. *Id.* Plaintiff's classroom was located near the exit of the 6th building at the far end of campus. *Id.* Throughout the day, Plaintiff's classroom was easily accessible through the entrance and exit door of that building. *Id.*

During the course of the school day on October 18, 2010, some faculty members were told to secure their classrooms. Compl. ¶ 23. Plaintiff was told not to cover the window on her classroom door and to leave the door unlocked, but to close the blinds. *Id.* Plaintiff noticed that a large number of students were absent from her classroom and one student was pulled from her class by his mother. Compl. ¶ 24. Plaintiff later learned that School Board members also removed their children from the school. *Id.* Plaintiff was unaware of the nature of the need for security despite having asked for particulars from the Assistant Principal, Angela Garland. Compl. ¶25.

At no time on October 18, 2010, did Plaintiff receive any specific information about the nature of the threat. *Id.* Upon information and belief, members of the Jacksonville High School administration, as well as the school Superintendent and the members of the School Board were aware that a specific threat had been made to the life of Plaintiff. Compl. ¶26. No action was taken to alert the Plaintiff that a specific threat was made against her. *Id.* Upon returning to

school on October 19, 2010, Plaintiff first learned that she was the subject of the threat. Compl. ¶27. Dr. Lynch showed her the Facebook page that stated: "Make sure you shoot Ms. Swaso." *Id.* This was the first time that Plaintiff had heard of the threat and was concerned that, on numerous occasions during the previous day, no one had ever said anything about the threat to her, nor did anyone check on her during the day. *Id.* Further, the Plaintiff was told that although there was a considerable presence of law enforcement officers in and around the school office and cafeteria of Jacksonville High School on October 18, 2010, no police officers were around or in the building where Plaintiff was located at the far end of campus about a quarter of a mile away. *Id.*

On October 20, 2010, Dr. Lynch suggested that Plaintiff, Dr. Lynch, and the white female student who requested the killing, sit down so that the student could apologize to the Plaintiff. Compl. ¶ 28. Dr. Lynch also asked the Plaintiff to allow the white female student to remain in her classroom. *Id.* Plaintiff responded that she did not want to have the female student who made the threat against her remain in her classroom. *Id.* Dr. Lynch responded that she had no place else to put the student. *Id.* On Wednesday, October 20, 2010, Dr. Kathy Spencer, Superintendent of Onslow County Schools, came to Jacksonville High School to meet with the teachers at their monthly meeting. Compl. ¶ 29. She thanked the faculty for how they handled the crisis of October 18, 2010. She did not speak to Plaintiff or acknowledge her. *Id.* On October 21, 2010, Dr. Lynch again approached the Plaintiff in the hallway insisting that she sit down and allow the white female student to apologize to her and return to her classroom. Compl. ¶30. Plaintiff emphatically rejected that idea. *Id.* Dr. Lynch eventually assigned the white female student to a classroom directly across the hall from that of the Plaintiff. *Id.*

4

At all times on October 18, 2010, there was a strong presence of police officers around the office building housing the principal's office. Compl. ¶ 31. No level of police protection was at the building where Plaintiff taught. *Id.* The female student who made the threat against the Plaintiff was given a three-day out of school suspension. *Id.* The student who threatened Dr. Lynch was placed in the Onslow County Learning Center for the remainder of the year. *Id.* The African American student, who reported seeing the threats on Facebook, was arrested and given 5 days out of school suspension. *Id.* As a result of learning of the threat and the school's apparent disregard for her safety, Plaintiff experienced sleeplessness, nervousness, heart palpitations, sweating, chills, high blood pressure, and insomnia. Compl. ¶ 32 She consulted with a physician and was taken out of school for five days due to her high blood pressure and the heart palpitations. *Id.*

On or about October 27, 2010, Plaintiff had a conversation with the Assistant Principal, Angela Garland, who told her that despite school officials being aware of the threat before October 18, 2010, that she did not send an e-mail, or otherwise warn her, because they were afraid that the information would be forwarded to other teachers. Compl. ¶ 33. As Assistant Principal Angela Garland and Plaintiff were talking, Dr. Lynch came in and told Plaintiff that the African American student who reported the threats was to blame because he had told about the incident. *Id.* She went on to say that the white students were only playing a virtual game and that there was never a threat. *Id.* When Plaintiff asked Dr. Lynch why she did not notify her or her husband about the threat, Dr. Lynch replied, "By law, I do not have to tell you or your husband anything." Compl. ¶ 34.

Beginning in December, 2010, Plaintiff's blood pressure and heart palpitations began to increase to a dangerous level and she had to be out of work from December 2, 2010 through

5

December 17, 2010.  Compl. ¶ 35.  During her leave, Plaintiff kept in touch with the substitute teacher, providing all work and lesson plans, grading papers and preparing quizzes and final exams.  *Id.*  Plaintiff was released by her doctor to return to work on January 10, 2011 with only one restriction of "no prolonged standing."  Compl. ¶ 36.  Plaintiff was not allowed to return to work despite this limited restriction.  *Id.*  Plaintiff believes that others have been allowed to return to work with more serious limitations.  *Id.*  Plaintiff experienced severe emotional distress as a result of the treatment which she received from the Onslow County Board of Education, Dr. Lynch and Dr. Spencer.  *Id.*  Plaintiff was treated differently than a white employee of the school system with regard to measures taken to ensure her security and safety on October 18, 2010.  *Id.*

### III.  ARGUMENT

#### A.  Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Further, "a complaint need not 'make a case' against a defendant or '*forecast evidence* sufficient to prove an element' of the claim.... It need only '*allege facts* sufficient to state elements' of the claim."  *Chao v. Rivendell Woods, Inc.,* 415 F.3d 342, 349 (4th Cir. 2005) (internal citations omitted and emphasis in original).  An adequately stated claim must be supported by a showing of any set of facts consistent with the allegations in the complaint in order to survive a motion to dismiss.  *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 563 (2007).  A complaint can survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1960 (2009), quoting *Twombly*, supra, 550 U.S. at 570.  For the purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court should construe allegations in the

6

complaint as true and taken in the light most favorable to the plaintiff. *Howell v. Gagnon*, 2010 WL 3239058, 3 (E.D.N.C. 2010), citing *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969).

> B.   **Plaintiff's Title VII Claim for Discrimination**

Plaintiff does not oppose the dismissal of the Title VII Claim for discrimination.

> C.   **Plaintiff's Section 1983 And Intentional Torts Claims Against Defendant Kathy Spencer Are Not Barred By The Statute Of Limitations.**

On October 16, 2013, Plaintiff filed her original Complaint against Defendants based on race discrimination and intentional infliction of emotional distress. On November 1, 2013, Plaintiff filed an amended Complaint adding Spencer as a party also based on race discrimination and intentional infliction of emotional distress. Defendants contend Plaintiff's claims against Defendant Kathy Spencer ("Spencer") are time barred by the statute of limitations.

The statute of limitations for the state tort claim intentional infliction of emotional distress is three years. N.C. Gen. Stat. § 1-52(5). Because Section 1983 does not have its own statute of limitations, courts borrow the time limitation from the analogous state statute of limitations. *Sheaffer v. County of Chatham,* 337 F. Supp. 2d 709, 717 (M.D.N.C. 2004). The applicable statute in North Carolina is N.C. Gen. Stat. § 1-52(5), which provides a three year limitation on personal injury actions. *Id.* Plaintiff filed her original Complaint on October 16, 2013, prior to her three year statute of limitation that ran on October 19, 2013. Her amended complaint filed on November 1, 2013 related back to the filing of the original Complaint as provided by Rule 15 of the Federal Rules of Civil Procedure.

Rule 15 of the Federal Rules of Civil Procedure "permits a pleading to be amended and a party added if the claim against the new party arose out of the conduct, transaction or occurrence set forth in the original complaint." *Holden v. R. J. Reynolds Industries, Inc.,* 82 F.R.D. 157, 160 (M.D.N.C. 1979). It further provides that:

7

> [a]n amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

*Id.*

Here Defendants concede that Spencer's acts were identified in the original Complaint that was filed on October 16, 2013. The same acts of discrimination are alleged against her as are alleged in the original Complaint. Thus, the only issue remaining for the Court to decide is whether Spencer had sufficient notice of the institution of this action, and whether she knew or should have known that, but for the mistake, the action would have been brought against her.

The analysis that is applicable here "looks to the identity of interest between the named party and the one to be added to determine whether the latter knew of the mistake." *Holden,* 82 F.R.D. at 161. In the instant case, Spencer should have known of her connection with this lawsuit as she was named in the body of the original Complaint and she serves as the Onslow County Superintendent. The Onslow County Board of Education and Spencer are so closely related in their business operations, based on Spencer's capacity as the Onslow County Superintendent, the institution of an action against the Onslow County Board of Education serves to provide notice of the litigation to Spencer.

Additionally, the objective of Rule 15(c) of the Federal Rules of Civil Procedure is 'to avoid the application of the statute of limitations when no prejudice would result to the party sought to be added by the amendment. . . ." *Holden,* 82 F.R.D. at 161, Headnote 5. In order for an amendment adding a party to relate back under Rule 15(c) the party to be added must have received notice of the action before the statute of limitations has run. *Holden,* 82 F.R.D. at 161.

As discussed above, Spencer received this notice on October 16, 2010, when the original Complaint was filed. Spencer received notice of the action before the statute of limitations ran and is therefore not prejudiced in maintaining her defense on the merits. Therefore, the statute of limitations does not bar Plaintiff's claim.

> **D.** **Plaintiff's Claim For Intentional Infliction Of Emotional Distress Should Not Be Dismissed.**

The State of North Carolina recognizes the tort of intentional infliction of emotional distress. See *Stanback v. Stanback*, 297 N.C. 181, 254 S.E. 2d 611 (1979). A claim for intentional infliction of emotional distress exists "when a defendant's 'conduct exceeds all bounds usually tolerated by decent society' and the conduct 'causes mental distress...'" *Id.* at 196, 254 S.E. 2d at 622. "The elements of the tort consist of: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 487-88, 340 S.E.2d 116, 119 (1986). "The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Id.* at 488. "The determination of whether the conduct alleged was intentional and was extreme and outrageous enough to support such an action is a question of law for the trial judge." *Guthrie,* 152 N.C. App. at 21.

Here, Defendants, through Donna Lynch, intentionally engaged in conduct toward Plaintiff that was intolerable and outrageous to society's expectations. The conduct exceeds all bounds usually tolerated by a decent society. Plaintiff's Complaint alleges facts that Defendant, Donna Lynch, failed to inform Plaintiff that her life had been threatened by one of her own students. Dr. Lynch was made aware of the threat against Plaintiff on October 17, 2010 but intentionally failed to advise Plaintiff of the threat until October 19, 2010. It is clear through Dr. Lynch's actions that she knew Plaintiff would suffer mentally by her failure to inform Plaintiff.

9

Plaintiff was in school the entire time with a pending death threat on her life and Defendants allowed her to go to school all day, by herself, with no notice. Her classroom door was close to an exit which was extremely dangerous considering the circumstances. This is conduct that surely exceeds all bounds usually tolerated in a decent society. An employer has a responsibility to inform their employees of any imminent dangers. In this case, Dr. Lynch did not inform Plaintiff of an imminent threat and audaciously stated that she did not have to inform Plaintiff or her husband of anything. It is outrageous that Dr. Lynch informed other teachers about the threat but did not advise the teacher who was the subject of the threat.

Dr. Lynch's actions greatly impacted Plaintiff. Defendants contend that Plaintiff did not allege facts that showed she suffered from a "type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by a professional trained to do so." *Waddle v. Sparks,* 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992). However, "[e]motional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like." *Pacheco v. Rogers & Breece, Inc.,* 157 N.C. App. 445, 449 (N.C. Ct. App. 2003).

> …It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. . . . It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.

*Waddle v. Sparks,* 331 N.C. 73 (N.C. 1992) (Citing Restatement (Second) of Torts § 46 cmt. j (1965).

Plaintiff has suffered greatly from Defendants' actions. Beginning in December, 2010, Plaintiff's blood pressure and heart palpitations began to increase to a dangerous level and she

10

Case 7:13-cv-00224-FL   Document 27   Filed 05/05/14   Page 10 of 16

had to be out of work from December 2, 2010 through December 17, 2010. She also suffered sleeplessness, nervousness, sweats and chills. Plaintiff was released by her doctor to return to work on January 10, 2011 with a restriction of "no prolonged standing." These medical conditions were a direct result of Plaintiff's unpleasant mental reactions caused from the incident described above and in the Complaint. Based on the foregoing, Plaintiff has alleged facts that constitute severe emotional distress.

### E. Plaintiff Has Established A P*rima Facie* Case of Discrimination.

Plaintiff's remaining claims arise under 42 U.S.C. 2000e *et seq.*, Section 1981 of the Civil Rights Act of 1866 and 42 U.S.C. § 1983. Section 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and territory to make and enforce contracts…and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...

42 U.S.C. § 1981(a). Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Lowery v. Circuit City Stores, Inc.,* 206 F.3d 431, 440-441 (4th Cir. Va. 2000). The Fourth Circuit Court of Appeals has held that "courts should employ the same analysis with respect to § 1981 race discrimination claims as that used in Title VII race discrimination cases." *Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.,* 320 F. Supp. 2d 378, 402 (M.D.N.C. 2004).

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage,…subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1981. In order to establish liability under § 1983, "a plaintiff must prove two essential elements: (1) that the defendants acted under color of state law and (2) that the plaintiff

11

suffered a deprivation of a constitutional right as a result of that action." *Davis,* 320 F. Supp. at 403 (M.D.N.C. 2004). The United States Supreme Court has held that in a suit brought against a state actor, § 1983 is the exclusive federal remedy for a violation of the rights guaranteed under § 1981. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735-36 (1989). Thus, a § 1981 claim in effect merges with § 1983, and courts treat the claims as a single claim. *Davis,* 320 F. Supp. at 403 (M.D.N.C. 2004). Race discrimination claims under sections 1981 and 1983 are evaluated under the same framework applied to Title VII claims. *Love-Lane v. Martin,* 355 F.3d 766, 786 (4th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)).

Under Title VII, plaintiffs must establish that (1) they are members of a protected class, (2) they suffered an adverse employment action, (3) they were performing in a manner that satisfied their employer's legitimate job expectations, and (4) the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination." *Jenkins v. Trs. of Sandhills Cmty. Coll.,* 259 F. Supp. 2d 432, 443 (M.D.N.C. 2003) (quoting *EEOC v. Sears Roebuck & Co.,* 243 F.3d 846, 851 n.2 (4th Cir. 2001)), aff'd, 80 F. App'x 819 (4th Cir. 2003).

Plaintiff is a Hispanic African American. She was employed by Defendants as a schoolteacher and was employed at the Jacksonville High School as a Spanish teacher. At all times during her employment with the Onslow County Board of Education, Plaintiff performed her duties in a manner satisfying Defendants' legitimate job expectations. She was a highly respected high school teacher and enjoyed good relations with parents, students and other faculty members. These facts satisfy elements one and three above.

Defendants contend that Plaintiff did not suffer an adverse employment action. However, the facts stated in the Complaint clearly show that Plaintiff suffered an adverse employment action. Plaintiff has alleged facts showing concrete harm resulting from Defendants' action. An adverse employment action is "a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. [793] Wash. Homes, Inc.,* 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir. 2004)). Plaintiff suffered disparate treatment on October 18, 2010. Her life was threatened by one of her students and she was never informed. Other teachers, who were white, were informed of the threat and their lives were not even the subject of the threat. Plaintiff was treated differently than the other white teachers under the circumstances. At no time on October 18, 2010, did Plaintiff receive any specific information about the nature of the threat. No action was taken to alert the Plaintiff that a specific threat was made against her. Further, there was a considerable presence of law enforcement officers in and around the school office and cafeteria of Jacksonville High School on October 18, 2010 where white teachers were located, but no police officers were around or in the building where Plaintiff was located at the far end of campus about a quarter of a mile away. This adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination.

After Plaintiff's blood pressure and heart palpitations began to increase to a dangerous level, she had to be out of work from December 2, 2010 through December 17, 2010. When Plaintiff was released by her doctor to return to work on January 10, 2011 with only one restriction of no prolonged standing, she was not allowed to return to work despite this limited restriction. It is alleged that others have been allowed to return to work with more serious limitations. Plaintiff was constructively discharged. This also shows that Plaintiff suffered disparate treatment due to

13

the adverse employment action of Defendants. Plaintiff successfully connects the employment action and her allegations of disparate treatment to race as she was clearly treated differently.

As discussed above, Plaintiff has pled sufficient facts in the Complaint that establish a prima facie case of discrimination. See *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973). Defendants have yet to articulate a legitimate nondiscriminatory reason for their action towards Plaintiff.

Last, Defendants assert that Plaintiff's Section 1983 claim fails because there is no respondeat superior liability in employment discrimination cases. *Love-Lane,* 355 at 782. However, although respondeat superior does not apply, supervisory liability may be found in Section 1983 actions if a plaintiff can demonstrate that the supervisory official's inaction amounts to deliberate indifference to or tacit authorization of the unconstitutional actions of that official's subordinates. *Slakan v. Porter,* 737 F.2d 368 (4th Cir. 1984), cert. denied, 470 U.S. 1035, 105 S. Ct. 1413, 84 L. Ed. 2d 796 (1985). Here, the facts indicate that the Board of Education and its Board Members knew or should have known of the decision not to inform Plaintiff of the threat on her life. As the Board of Education and its Board Members knew or should have known of the decision not to inform Plaintiff of the threat on her life, their inaction and tacit authorization amounts to deliberate indifference to Plaintiff's safety and the disparate treatment towards Plaintiff in comparison to the white teachers. Thus, Plaintiff's constitutional claims against these Defendants survive.

## **CONCLUSION**

For the forgoing reasons, Defendants should not be entitled to dismissal of Plaintiff's claims of discrimination pursuant to 42 U.S.C. §§ 1981 and 1983.

14

This 5th day of May, 2014.

                                      s/Geraldine Sumter
                                      Geraldine Sumter
N.C. Bar No: 11107
Tiffany Mack
N.C. Bar No: 43026
FERGUSON CHAMBERS & SUMTER, P.A.
741 Kenilworth Avenue, Suite 300
Charlotte, North Carolina 28204
Telephone: 704-375-8461
Facsimile: 704-334-5654
E-mail: gsumter@fergusonsumter.com

Attorney for Plaintiff

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTON TO DISMISS IN LIEU OF ANSWER** was electronically filed with the Clerk of Court using the CM/ECF System and a copy of the foregoing document was served on the following counsel of record through the electronic filing system for the U.S. District Court for the Eastern District of North Carolina:

        Scott C. Hart
        E-mail: shart@nclawyers.com

This 5th day of May, 2014.


        s/ Geraldine Sumter
        Geraldine Sumter
        N.C. Bar No: 11107
        Tiffany Mack
        N.C. Bar No: 43026
        FERGUSON, CHAMBERS,
           & SUMTER, P.A.
        741 Kenilworth Avenue, Suite 300
        Charlotte, North Carolina 28204
        Telephone: 704-375-8461
        Facsimile: 704-334-5654
        E-mail: gsumter@fergusonsumter.com

        Attorney for Plaintiff