IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:13-CV-00224-FL

| | |
|---|---|
| CARMEN SWASO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| ONSLOW COUNTY BOARD OF | ) |
| EDUCATION, PAMELA THOMAS, | ) |
| FRED HOLT, MARGARET BROWN, | ) |
| BROCK RIDGE, JEFFREY L. BROWN, | ) |
| LINDA PADGETT-PARKER, RONNIE | ) |
| ROSS, MARY ANN SHARPE, EARL | ) |
| TAYLOR, PAUL WIGGINS, DR. | ) |
| DONNA LYNCH, *in their individual and* | ) |
| *official capacities*, and DR. KATHY | ) |
| SPENCER, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on the motion to dismiss of Defendants Onslow County Board of Education, Pamela Thomas, Dr. Donna Lynch, and Dr. Kathy Spencer (collectively, "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [DE-22]. Defendants also assert in a footnote that the remaining defendants have not been served and should be dismissed pursuant to Rule 12(b)(2) and (b)(5) of the Federal Rules of Civil Procedure. Plaintiff Carmen Swaso ("Plaintiff" or "Swaso") filed a response [DE-27], and Defendants filed a reply [DE-28]. The parties have not consented to the jurisdiction of the magistrate judge; therefore, Defendants' motion to dismiss is considered here as a recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Local Civil Rule 72.3(c). For the reasons set forth below, it is recommended that the motion to dismiss be allowed in part and denied in part.

## I. STATEMENT OF THE CASE

On October 16, 2013, Plaintiff filed this action alleging race-based employment discrimination in violation of 42 U.S.C. §§ 1981, 1983, and 2000e, as well as a state law claim for intentional infliction of emotional distress. Compl. [DE-1]. On November 1, 2013, Plaintiff amended her complaint to add Defendant Dr. Kathy Spencer. [DE-8]. On February 19, 2014, the Clerk of Court issued a notice to Plaintiff of failure to make service within 120 days. [DE-12]. Thereafter, counsel entered a notice of appearance on behalf of Donna Lynch, Kathy Spencer, Pamela Thomas, and the Onslow County Board of Education [DE-13], and Plaintiff filed an affidavit of service as to these Defendants [DE-18]. After being allowed an extension of time to answer or otherwise respond to the amended complaint, Defendants filed the instant motion to dismiss. [DE-22].

## II. STATEMENT OF THE FACTS

The facts alleged and viewed in the light most favorable to Plaintiff, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), are as follows. Plaintiff is a Hispanic African American and was employed as a Spanish teacher at Jacksonville High School. Am. Compl. [DE-8] ¶¶ 1, 15. She was a respected and well-liked teacher who performed her duties in a satisfactory manner. *Id.* ¶ 16. Defendant Onslow County Board of Education (the "Board") is a public entity responsible for providing educational services to the public in Onslow County. *Id.* ¶ 2. Defendant Kathy Spencer is Superintendent of the Onslow County School System. *Id.* ¶ 3. Defendant Donna Lynch is employed by the Board as a principal. *Id.* ¶ 4. Defendants Fred Holt, Pamela Thomas, Margaret Brown, Brock Ridge, Jeffrey L. Brown, Lina Padgett-Parker, Ronnie Ross, Mary Ann Sharpe, Earl Taylor, and Paul Wiggins (collectively, the "Members") were members of the Board at the time of

2

the events alleged as a basis for this lawsuit. *Id.* ¶¶ 5-14.

On October 17, 2010, a white male Jacksonville High School student posted a threat on Facebook against principal Lynch, and a white female Jacksonville High School student posted in response, "Make sure you shoot Ms. Swaso." *Id.* ¶ 17. Lynch learned of the threat against Plaintiff on October 17, but did not inform Plaintiff of the threat until two days later, on October 19. *Id.* ¶ 18. On October 18, the day the alleged threats were supposed to be carried out, Plaintiff arrived at work unaware of the threats, but noticed three police patrol cars parked across the road in front of the Jacksonville High School campus. *Id.* ¶¶ 20-21. Plaintiff checked into the school office, but saw no school personnel, and proceeded to her classroom located near the entrance to the sixth building on the opposite end of the school campus. *Id.* ¶¶ 21-22.

On October 18, during the course of the day, some faculty members were told to secure their classrooms, and Plaintiff was told to close the blinds but not to cover the window of her classroom door and to leave the door unlocked. *Id.* ¶ 23. Plaintiff noticed that a large number of students were absent from her classroom and that one student was pulled from her class by his mother; later she learned that Board members removed their children from the school. *Id.* ¶ 24. Plaintiff inquired of the assistant principal as to the nature of the threat, but was provided no specific information regarding the threat made against Plaintiff. *Id.* ¶¶ 25-26.

Plaintiff first learned of the threat against her when she returned to school on October 19, and Lynch showed her the Facebook post. *Id.* ¶ 27. Plaintiff became concerned that she had not been notified of the threat the previous day and that despite a strong police presence around the building housing the principal's office, there was no law enforcement presence in or around the building where Plaintiff's classroom was located. *Id.* ¶¶ 27, 31. The following day, on October 20, Lynch

3

suggested that Plaintiff, Lynch, and the student who posted the threat against Plaintiff sit down so that the student could apologize to the Plaintiff and also asked that Plaintiff allow the student to remain in her classroom. *Id.* ¶ 28. Plaintiff responded that she did not want the student to remain in her classroom, to which Lynch responded that she had no place else to put the student. *Id.* Spencer also came to the school and met with teachers on October 20, thanking them for their handling of the crisis, but not speaking to or acknowledging Plaintiff. *Id.* ¶ 29. On October 21, Lynch again approached Plaintiff about allowing the student to apologize and return to Plaintiff's classroom, which Plaintiff again declined. *Id.* ¶ 30.

On October 27, Plaintiff learned from the assistant principal that, despite being aware of the threat to Plaintiff prior to October 18, Plaintiff was not warned because they were afraid that the information would be forwarded to other teachers. *Id.* ¶ 33. Lynch also told Plaintiff that an African American student was to blame because he had reported the threats, and that the white students who actually posted the threats were only playing a virtual game and there was never, in fact, any actual threat. *Id.* Lynch also indicated, in response to an inquiry by Plaintiff as to why she and her husband were not informed of the threat, that Lynch was under no legal obligation to tell Plaintiff or her husband anything. *Id.* ¶ 34.

The student who posted the threat against Plaintiff ultimately received a three-day out of school suspension and was assigned by Lynch to a classroom directly across the hall from Plaintiff. *Id.* ¶¶ 30-31. The student who posted the threat against Lynch was placed in the Onslow County Learning Center for the remainder of the year. *Id.* ¶ 31. The African American student who was not involved with making the threats but communicated the posted threats was reported to the local police by Lynch, resulting in the student's arrest and a five-day suspension from school, while

4

neither of the students who actually made the threats was reported to the police by Lynch. *Id.* ¶¶ 19, 31.

After learning of the threat and the school's perceived disregard for her safety, Plaintiff experienced sleeplessness, nervousness, heart palpitations, sweating, chills, high blood pressure, and insomnia. *Id.* ¶ 32. As a result, Plaintiff consulted with a physician and was taken out of school for five days due to her high blood pressure and the palpitations. *Id.* Beginning in December 2010, Plaintiff's blood pressure and palpitations began to increase to a dangerous level and she was out of work from December 2 through December 17. *Id.* ¶ 35. During her leave, Plaintiff maintained contact with a substitute teacher, providing all work and lesson plans, grading papers and preparing quizzes and final exams. *Id.* Plaintiff was released by her doctor to return to work on January 10, 2011, with only one restriction of "no prolonged standing," but was not allowed to return to work. *Id.* ¶ 36. Plaintiff believes that others have been allowed to return to work with more serious limitations. *Id.* According to the amended complaint, Plaintiff was treated differently than a white employee of the school system with regard to measures taken to ensure her security and safety on October 18, 2010, and Plaintiff experienced severe emotional distress as a result of the treatment she received from the Board, Lynch and Spencer. *Id.* ¶¶ 36-37.

### III. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a court may dismiss an action which fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion to dismiss tests the sufficiency of the facts pleaded in the complaint and the relevant inquiry is whether the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In reviewing a motion to dismiss, a court is required to

5

consider the complaint in the light most favorable to the plaintiff and to accept as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

The pleading standard set forth in Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and a complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, while "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

## IV. ANALYSIS

Defendants contend that Plaintiff has failed to properly allege a Title VII claim, that Plaintiff's section 1983 and intentional tort claims against Spencer are time barred, that Plaintiff has failed to properly allege an intentional infliction of emotional distress claim, and that Plaintiff has failed to establish a prima facie case of discrimination with respect to her constitutional claims under sections 1981 and 1983. Defs.' Mem. [DE-23] at 3-11. Plaintiff does not oppose dismissal of her Title VII discrimination claim, Pl.'s Mem. in Opp'n [DE-27] at 7, and dismissal of this claim is recommended where there are no allegations to indicate Plaintiff has satisfied the requisite administrative remedies by first filing a charge with the Equal Employment Opportunity Commission. *See Chester v. Adams Auto Wash, Inc.*, No. 5:13-CV-75-FL, 2014 WL 267095, at *3 (E.D.N.C. Jan. 24, 2014) (unpublished op.) ("Title VII requires a plaintiff to exhaust administrative

6

remedies by filing a charge with the EEOC before filing in federal court.") (citing 42 U.S.C. § 2000e-5(b), (f)(1)). The remainder of Plaintiff's claims and Defendants' asserted grounds for dismissal thereof will be discussed in turn.

## A. Statute of Limitations as a Bar to Plaintiff's Section 1983 and Intentional Infliction of Emotional Distress Claims Against Spencer

Defendants contend that Plaintiff's claims of race discrimination pursuant to section 1983 and for intentional infliction of emotional distress, both of which were first asserted against Spencer in Plaintiff's amended complaint, are barred by the statute of limitations. Defs.' Mem. at 3-6; Defs.' Reply [DE-28] at 2-3. Plaintiff counters that her amended complaint relates back to the filing of the original complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. Pl.'s Mem. in Opp'n at 7-9.

The statute of limitations for section 1983 actions is borrowed from state law, and here the three-year statute of limitations for personal injury actions set forth in N.C. Gen. Stat. § 1-52(16) applies. *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1161 (4th Cir. 1991). Likewise, "[t]he statute of limitations for intentional infliction of emotional distress is three years." *Johnston v. Leith, Inc.*, No. 5:10-CV-547-FL, 2011 WL 1770434, at *7 (E.D.N.C. May 9, 2011) (citing N.C. Gen. Stat. § 1-52(5)).

Defendant asserts that the conduct of which Plaintiff complains occurred on October 18, 2010, and that Plaintiff discovered the allegedly wrongful conduct at the latest on October 19, 2010. Defs.' Mem. at 4 (citing Compl. ¶¶ 17-27). Plaintiff filed the complaint initiating this action on October 16, 2013, Compl. [DE-1], within the three-year limitations period for both the section 1983 and intentional infliction of emotional distress claims. However, Spencer was not a named

7

Defendant in the initial complaint and was added as a Defendant with the filing of Plaintiff's amended complaint on November 1, 2013 [DE-8], which is outside three-year limitations period. Therefore, Plaintiff's claims against Spencer would be time-barred unless the amended complaint is found to relate back to the filing of the initial complaint.

Rule 15(c) governs when an amendment relates back to the original pleading and provides in pertinent part as follows:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> . . . .
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). Considering the relation-back requirements of Rule 15, the Fourth Circuit has instructed that an amendment that changes the party against whom a claim is asserted relates back to the date of the original pleading if

> (1) the claim in the amended complaint arose out of the same transaction that formed the basis of the claim in the original complaint; (2) the party to be brought in by the amendment received notice of the action such that it will not be prejudiced in maintaining a defense to the claim; and (3) it should have known that it would have originally been named a defendant "but for a mistake concerning the identity of the

8

proper party."

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 467 (4th Cir. 2007). The Fourth Circuit further explained that

> [a]t bottom, the inquiry, when determining whether an amendment relates back looks at whether the plaintiff made a mistake in failing to name a party, in naming the wrong party, or in misnaming the party in order to prosecute his claim as originally alleged, and it looks into whether the rights of the new party, grounded in the statute of limitations, will be harmed if that party is brought into the litigation.

*Id.* at 471; *see also Cherry v. Perdue Farms, Inc.*, No. 2:10-CV-23-FL, 2010 WL 5437222, at *3 (E.D.N.C. Dec. 27, 2010) ("'[A] party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide'") (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984) (per curiam)).

The initial complaint did not name Spencer as a Defendant, but alleged the following facts with respect to Spencer:

> On Wednesday, October 20, 2010, Dr. Kathy Spencer, Superintendent of Onslow County Schools, came to Jacksonville High School to meet with the teachers at their monthly meeting. She thanked the faculty for how they handled the crisis of October 18, 2010. She did not speak to Plaintiff or acknowledge her.
>
> . . . .
>
> Plaintiff experienced severe emotional distress as a result of the treatment which she received from the Onslow County Board of Education, Dr. Lynch and Dr. Spencer.

Compl. ¶¶ 28, 35. The amended complaint names "Dr. Kathy Spencer, Superintendent Onslow County Schools," as a Defendant and, in addition to the above facts alleged in the initial complaint, includes the following additional allegation: "Defendant, Dr. Kathy Spencer, upon information and belief, is a citizen and resident of Onslow County, North Carolina, and is Superintendent of the Onslow County School System." Am. Comp. ¶¶ 3, 29, 36.

9

Plaintiff contends that Spencer should have known of the lawsuit because she was named in the body of the original complaint and, as superintendent, has an identity of interest with the named Defendant Onslow County Board of Education, so that the institution of an action against the Onslow County Board of Education serves to provide notice of the litigation to Spencer. Pl.'s Mem. in Opp'n at 8. Defendants assert that Spencer was no longer superintendent of Onslow County Schools when Plaintiff filed the original complaint and had no knowledge of the claims asserted. Defs.' Reply at 2. Defendants further argue that the fact that Spencer was identified in the facts of the original complaint indicate that the failure to name her within the limitations period was solely attributable to Plaintiff. *Id.* at 3.

As an initial matter, the Fourth Circuit ruled in *Goodman v. Praxair* that adding a new defendant is considered an amendment that "changes the party" and, therefore, falls within the scope of subsection (c)(1)(C) of Rule 15. 494 F. 3d at 468 (adopting position that "by adding Praxair Services, Inc., as a defendant to the amended complaint, [the plaintiff] 'changed' the party he was suing, as required by Rule 15(c)(3) [now Rule 15(c)(1)(C)], because 'an *addition* to something is generally regarded as a *change* to that thing.'") (citations omitted). Thus, applying Rule 15(c)(1)(C) here, the undersigned finds that relation back is warranted.

First, there is no question that the claims against Spencer set forth in the amended complaint arouse out of the same conduct alleged in the original pleading, meeting the first requirement of Rule 15(c)(1)(C), that subsection (c)(1)(B) be satisfied.

Next, the requirement of Rule 15(c)(1)(C)(i), that Spencer received notice of the action within the period provided by Rule 4(m), is also satisfied. Significant here is that the relevant notice period is not the statute of limitations period, as Defendant's argument seems to assume, Defs.'

Mem. at 5, but rather is Rule 4(m)'s 120-day period for serving the summons and complaint. *See Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010) ("The 'limitation period' for purposes of analyzing whether the newly added defendant received notice and should have had knowledge of the action is the Federal Rule of Civil Procedure 4(m) service period . . . ."). Rule 4(m) provides, in pertinent part, that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Additionally, "Rule 15(c)'s notice period incorporates any extension of the 120-day period under Rule 4(m)." *Robinson*, 602 F.3d at 608 (citing Fed. R. Civ. P. 15, Advisory Comm. Notes (1991 Amendment) ("[T]his rule allows not only the 120 days specified in [Rule 4(m)], but also any additional time resulting from any extension ordered by the court pursuant to that rule.")).

On February 19, 2014, the Clerk of Court issued a notice to Plaintiff for failure to make service within 120 days and provided Plaintiff with 14 days to demonstrate good cause why service was not made within the prescribed time period or face dismissal. [DE-12]. However, on February 28, 2014, Plaintiff filed an affidavit of service indicating that Spencer was served with the summons, complaint, and amended complaint on February 11, 2014, which falls within the 120-day period provided by Rule 4(m) for serving the original complaint. [DE-18]. Therefore, Spencer received notice of the amended complaint within the period provided by Rule 4(m).

Moreover, Spencer was not prejudiced by the amendment where no action had yet to take place in this matter and Spencer was in no different position than if she had been named in the original complaint. *See Robinson*, 602 F.3d at 609 (finding no prejudice where at the time defendant received notice "'the proceedings [had] not advanced to the point that [he could] show any prejudice

11

with regard to [his] presentation or preparation of [his] defense'" and thus his defense on the merits was not prejudiced, leaving him is same position as if he had been named in the original complaint) (quoting *Bryant Elec. Co. v. Joe Rainero Tile Co.*, 84 F.R.D. 120, 124 (W.D.Va.1979)). Therefore, the second requirement is satisfied where Spencer received notice of the action such that she will not be prejudiced in maintaining a defense on the merits to the claim.

Finally, the third requirement is met where Spencer "knew or should have known that the action would have been brought against [her], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Again, the court looks to Spencer's knowledge within the Rule 4(m) limitation period and not the three-year statute of limitations period. *See Robinson*, 602 F.3d at 609 ("Finally, we must consider whether Clipse knew or should have known, within the Rule 4(m) limitation period, that Robinson's action would have been brought against him, 'but for a mistake concerning the proper party's identity.'") (citation omitted). In *Robinson*, the Fourth Circuit emphasized that the focus is not on why a mistake in failing to name the defendant was made, but rather on whether the new party "expected or should have expected" during the Rule 4(m) limitations period that it was meant to be named in the original complaint. *Id.* at 610. Thus, Defendants' assertion that Plaintiff's failure to name Spencer in the original complaint was attributable only to Plaintiff's own neglect is immaterial to the inquiry. *Id.*; *Goodman*, 494 F.3d at 469-72 (rejecting argument that relation back is unavailable where initial failure to name party is attributable to plaintiff's "lack of knowledge or poor strategy"). As was the case in *Robinson*, here Spencer knew within the relevant Rule 4(m) limitation period that she was intended by Plaintiff to be a defendant in this action because she was timely served with the amended complaint. 602 F.3d at 610. Therefore, the final requirement is satisfied, Plaintiff's amended complaint relates back to the filing

12

of the original complaint, and the claims against Spencer are not time barred.

**B.      Intentional Infliction of Emotional Distress**

Defendants next argue that Plaintiff has failed to state a claim for intentional infliction of emotional distress ("IIED"), specifically asserting that the allegations do not rise to the requisite level of extreme or outrageous conduct and Plaintiff has failed to plead the requisite severe and disabling harm as a result of the alleged conduct. Defs.' Mem. at 6-8. Plaintiff responds that the allegations as to Defendants' conduct are sufficiently outrageous and the allegations as to the harm suffered by Plaintiff as a result are sufficiently detailed and severe. Pl.'s Mem. in Opp'n at 9-11.

Under North Carolina law, a claim for IIED has three elements: "(1) extreme and outrageous conduct by defendants (2) which is intended to and does in fact cause (3) severe emotional distress." *Cherry*, 2010 WL 5437222, at *4 (citing *Holloway v. Wachovia Bank & Trust Co.*, 339 N.C. 338, 351, 452 S.E.2d 233, 240 (1994)). To satisfy the first element the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (quoting *Foster v. Crandell*, 181 N.C. App. 152, 168, 638 S.E.2d 526, 537 (2007) (internal quotation omitted), *disc. rev. denied*, 361 N.C. 567, 650 S.E.2d 602). "At the pleading stage, whether conduct is sufficiently 'extreme and outrageous' is a question of law for the court to decide." *Id.* (citing *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 354-55, 595 S.E.2d 778, 783 (2004)). Furthermore, "'North Carolina courts have been extremely reluctant to find actionable IIED claims in the employment context' . . . [and have only done so where] the conduct was extremely egregious, and involved sexual advances, obscene language, and inappropriate touching." *Id.* (quoting *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 544-45 (E.D.N.C. 2008)) (additional citations

13

omitted); *see also Moody-Williams v. LipoScience*, 953 F. Supp. 2d 677, 682-83 (E.D.N.C. 2013) (citing cases); *Thomas v. N. Telecom, Inc.*, 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000) ("[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress.") (citation omitted). Further, the North Carolina Supreme Court has adopted the following standard for an IIED claim: "the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Waddle v. Sparks*, 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992) (quoting *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)).

Plaintiff asserts that Lynch's failure to timely inform Plaintiff that one of her students posted a threat–"Make sure you shoot Ms. Swaso"–against Plaintiff "exceeds all bounds usually tolerated by a decent society." Pl.'s Mem. in Opp'n at 9. The parties have cited no cases factually similar to this one in support of their respective positions. Yet, when the facts alleged here are compared to those of other cases where IIED claims have been allowed to proceed, it is evident that the Defendants' omission in timely notifying Plaintiff of the posted threat and offering her additional protections, while perhaps ill-advised or callous, does not rise to the requisite level of "extreme or outrageous" as a matter of law. *See, e.g., Dickens v. Puryear*, 302 N.C. 437, 439, 454-55, 276 S.E.2d 325, 327, 336-37 (1981) (finding alleged conduct could be determined by a jury to be extreme and outrageous where defendants pointed pistol between plaintiff's eyes, beat him into semi-consciousness with nightsticks, and threatened him with castration); *Turner v. Thomas*, — N.C. App. —, 762 S.E.2d 252, 264 (2014) (finding allegations that SBI agents manufactured

14

evidence to negate plaintiff's self defense claim to a first degree murder charge sufficiently alleged outrageous conduct to support IIED claim); *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 490, 492-93, 340 S.E.2d 116, 121-22 (1986) (finding alleged conduct to be extreme and outrageous when supervisor engaged in unwanted sexual touching of plaintiff, screamed profanities at her when she refused his advances, and threatened her with bodily injury and a knife). Accordingly, Plaintiff has failed to state a claim for IIED.

## C. Section 1981 and 1983 Claims

Defendants finally argue that with respect to Plaintiff's section 1981 and 1983 claims, she has failed to allege direct or indirect evidence of discrimination and failed to establish a prima facie case of discrimination as to the element of adverse employment action. Defs.' Mem. at 8-11. Defendants also contend that Plaintiff's section 1983 claim against the Board and its members fails because it is based on a theory of respondeat superior. *Id.* at 11. Plaintiff counters that Defendants' disperate treatment of her—their failure to warn her of and protect her from a threat when another white faculty member was warned and afforded protections—as well as her constructive discharge, constitute adverse employment actions. Pl.'s Mem. in Opp'n at 11-14. Plaintiff also contends that she has sufficiently alleged a prima facie case of discrimination and that the Board and its members are liable under section 1983 on a theory of supervisory liability. *Id.* at 14.

"'The elements of a claim under § 1981 or § 1983 mirror those of Title VII[,]' *McCray v. Pee Dee Reg'l Transp. Auth.*, 263 F. App'x 301, 305 (4th Cir. 2008), and courts therefore analyze discrimination claims premised on these provisions of law by applying the same legal framework. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 n.7 (4th Cir. 2002)." *Shoffner v. Talecris Biotherapeutics, Inc.*, No. 5:10-CV-406-FL, 2012 WL 525550, at *4, n.11 (E.D.N.C. Feb. 16, 2012).

15

Section 1983 also extends only to persons acting under the color of state law. *Id.*; 42 U.S.C. § 1983. "A plaintiff pursuing a Title VII claim may either offer direct evidence of discrimination or use the burden-shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Fulford v. Daughtry*, No. 4:11-CV-103-FL, 2013 WL 2458368, at *10 (E.D.N.C. June 6, 2013). Here, Plaintiff contends she has established a prima facie case of discrimination, which implicates the burden-shifting framework.

"[I]n order to plead a case of disparate treatment sufficient to withstand a Rule 12(b)(6) motion, plaintiff[] must show: (1) that [she is a] member[] of a protected class; (2) whose job performance was satisfactory; (3) that [she was] subjected to adverse employment action; and (4) that similarly situated employees outside [her] class received more favorable treatment." *Id.* (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007)). "'[T]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Id.* (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 286 (4th Cir. 2004)). With respect to third element at issue here, "[a]n adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (internal quotation marks and citations omitted). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). A constructive discharge may satisfy the adverse employment action requirement. *Fulford v. Alligator River Farms, LLC*, 858 F. Supp. 2d 550, 559 (E.D.N.C. 2012).

Defendant first contends that Plaintiff failed to allege the requisite adverse employment action. Defs.' Mem. at 10-11. Plaintiff alleges that she was released by her doctor to return to work on January 10, 2011, restricted only to "no prolonged standing" and that she was not allowed to return to work. Am. Compl. ¶ 36. Defendants' alleged refusal to allow Plaintiff to return to work is an "adverse employment action" sufficient to satisfy the third element of Plaintiff's prima facie case. *See U.S. Equal Emp't Opportunity Comm'n v. Bojangles Rests., Inc.*, 284 F. Supp. 2d 320, 330 (M.D.N.C. 2003) (finding there was "no question" that failure to allow plaintiff to return to work after taking maternity leave was an "adverse employment action" for purposes of establishing prima facie case for Title VII claim). Accordingly, based on the allegations in the amended complaint, Plaintiff's claims under sections 1981 and 1983 should not be dismissed for failure to sufficiently plead an adverse employment action.

Defendants next contend that Plaintiff's section 1983 claim against the Board and its members fails because it is based on a theory of respondeat superior. Defs.' Mem. at 11. "Under North Carolina law, a local school board is deemed a municipality." *E.W. v. Wake Cnty. Bd. of Educ.*, No. 5:09-CV-198-FL, 2010 WL 1286215, at *14 (E.D.N.C. Feb. 16, 2010) (citations omitted), *adopted in part by* 2010 WL 1286218 (E.D.N.C. Mar. 30, 2010). "It is well established that a municipality cannot be held liable under § 1983 for injuries caused by its employees based on a theory of respondeat superior," but may be held liable only if the alleged injury was caused by a "policy, custom or practice of the municipality." *Id.* (citations omitted). Plaintiff has alleged no policy, custom or practice of the Board to which her alleged injury is attributable and appears to concede respondeat superior does not apply in this case. Pl.'s Mem. in Opp'n at 14. Rather, Plaintiff argues that the inaction of the Board and its members amounts to deliberate indifference or tacit

17

authorization of the decision by its subordinates not to inform Plaintiff of the threat. *Id.*

The Fourth Circuit has established the following requirements to demonstrate supervisory liability under section 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* (citations omitted). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (citation omitted). Similarly, deliberate indifference may be established by demonstrating "a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.* Importantly, a plaintiff "[o]rdinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, . . . for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (internal citation omitted). Here, Plaintiff has raised a single incident and fails to allege facts from which the requisite pervasive risk and deliberate indifference or tacit authorization could be reasonably inferred. Accordingly, Plaintiff has failed to allege facts to support

18

a section 1983 claim against the Board or its members under a theory of supervisory liability.

**D.      Failure to Serve Remaining Defendants**

Defendants assert that service has not been made within the time provided by Rule 4(m) on Defendants Fred Holt, Margaret Brown, Brock Ridge, Jeffrey L. Brown, Lina Padgett-Parker, Ronnie Ross, Mary Ann Sharpe, Earl Taylor, and Paul Wiggins and that they should be dismissed from this action pursuant to Rule 12(b)(2) and (b)(5). Defs.' Mem. at 1 n.1. " Failure to properly serve a defendant prevents a court from obtaining personal jurisdiction over the defendant and entitles the defendant to dismissal under Rule 12(b)(2)." *Fordham v. Doe*, No. 4:11-CV-32-D, 2011 WL 5024352, at *3 (E.D.N.C. Oct. 20, 2011) (citations omitted). Moreover, a defendant is entitled to dismissal under Rule 12(b)(5) where service is deficient, and the "plaintiff must establish that service was adequate when a defendant seeks dismissal pursuant to Rule 12(b)(5)." *Id.* (citation omitted).

On February 19, 2014, the Clerk of Court issued a notice to Plaintiff for failure to make service of the summonses and complaint within 120 days and provided Plaintiff with 14 days to demonstrate good cause why service was not made within the prescribed time period or face dismissal. [DE-12]. However, on February 28, 2014, Plaintiff filed an affidavit of service indicating that the Board was duly served by service on Pamela Thomas, Chair of the Board, and that Spencer and Lynch had also been duly served with the summons, complaint, and amended complaint on February 11, 2014, which falls within the 120-day period provided by Rule 4(m) for serving the original complaint. [DE-18]. There is nothing in the record to indicate the remaining Defendants have been served, and Plaintiff did not respond to this issue in her memorandum in opposition to the motion to dismiss. Accordingly, Plaintiff has failed to demonstrate service on Defendants Fred Holt, Margaret Brown, Brock Ridge, Jeffrey L. Brown, Lina Padgett-Parker, Ronnie Ross, Mary Ann

19

Sharpe, Earl Taylor, and Paul Wiggins, and these Defendants should be dismissed.

## V. CONCLUSION

For the reasons stated herein, it is RECOMMENDED as follows:

(1) The motion to dismiss Plaintiff's Title VII claim as to all Defendants should be ALLOWED;

(2) The motion to dismiss Plaintiff's section 1983 claim as time barred as to Spencer should be DENIED;

(3) The motion to dismiss Plaintiff's claim for intentional infliction of emotional distress for failure to state a claim as to all Defendants should be ALLOWED;

(4) The motion to dismiss Plaintiff's section 1983 claim for failure to state a claim should be ALLOWED as to the Onslow County Board of Education and its Members and DENIED as to all other Defendants;

(5) The motion to dismiss Plaintiff's section 1981 claim for failure to state a claim as to all Defendants should be DENIED; and

(6) The motion to dismiss Defendants Fred Holt, Margaret Brown, Brock Ridge, Jeffrey L. Brown, Lina Padgett-Parker, Ronnie Ross, Mary Ann Sharpe, Earl Taylor, and Paul Wiggins for failure of service should be ALLOWED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

SUBMITTED, this the *13* day of November 2014.

Robert B. Jones, Jr.
United States Magistrate Judge

20