IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:13-CV-224-FL

| | |
|---|---|
| CARMEN SWASO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ONSLOW COUNTY BOARD OF | ) |
| EDUCATION; PAMELA THOMAS; | ) |
| FRED HOLT; MARGARET BROWN; | ) |
| BROCK RIDGE; JEFFREY L. BROWN; | )   ORDER |
| LINDA PADGETT-PARKER; RONNIE | ) |
| ROSS; MARY ANN SHARPE; EARL | ) |
| TAYLOR; PAUL WIGGINS; DONNA | ) |
| LYNCH, *in their individual and official* | ) |
| *capacities*; and KATHY SPENCER, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (DE 22). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr., entered a memorandum and recommendation ("M&R"), (DE 29), wherein it is recommended that defendants' motion be granted in part, to which the parties timely filed objections, and which defendants' objections were responded to by plaintiff. In this posture, the issues raised are ripe for ruling. For the reasons stated more specifically below, the court declines to adopt the M&R in relevant part, adopts the M&R in all other respects, and grants defendants' motion.

**BACKGROUND**

Plaintiff, a teacher with the Onslow County School System, instituted this action on October 16, 2013, against defendants Onslow County Board of Education ("Board"), Pamela Thomas, and Donna Lynch. On November 11, 2013, plaintiff amended her complaint to include defendant Kathy Spencer. As alleged in the complaint defendant Spencer is the superintendent of the Onslow County School System; defendant Lynch is an employed by defendant Board as principal of Jacksonville High School; and defendant Thomas is a member of defendant Board. As pertinent here, plaintiff alleges that defendants discriminated against her in her employment on the basis of race, in violation of 42 U.S.C. §§ 1981 and 1983. (Compl. ¶¶38-46).

Plaintiff also asserts a claim under §§ 1981 and 1983 against the remaining defendants. However, those claims are not relevant to the instant order. As discussed in the M&R, plaintiff failed to serve the additional defendants in a timely manner. Therefore, where plaintiff has not objected to the M&R's conclusion that such claims should be dismissed, and, upon considered review of the relevant portions of the M&R, the court adopts this as its own, and the claims against the remaining defendants are dismissed.

Finally, plaintiff brought an intentional infliction of emotional distress ("IIED") claim against all defendants. The M&R recommends dismissal of plaintiff's IIED claim, and plaintiff has not objected. As above, where plaintiff has not objected and the court perceives no issue with the M&R's recommendation, the court adopts this conclusion as its own.

## STATEMENT OF FACTS

On October 17, 2010, a white Jacksonville High School student posted a threat against defendant Lynch on his Facebook page. (Id. ¶17). In response, another student, also white, replied "Make sure you shoot Ms. Swaso." (Id.). Previously, this student had been enrolled in one of

2

plaintiff's classes, but was removed after making the inflammatory posting. (See id. ¶27). Defendant Lynch learned of the threats against both herself and plaintiff on October 17, 2010, when they were reported by an African American student. (Id. ¶18). Although never carried out, the threatened actions were supposed to occur on October 18, 2010. (Id. ). However, defendant Lynch did not inform plaintiff of the outstanding threats until October 19, 2010. (Id.).

On October 18, 2010, the day the threats were to be carried out, plaintiff came to work unaware of any potential danger. (Id. ¶20). Upon her arrival, she noticed three police vehicles parked across the road, opposite the front of Jacksonville High School, and concentrated around the school's main office building and cafeteria. (Id. ¶¶20, 26). Plaintiff checked in at the school's office and thereafter made her way to her classroom, located on the far end of the school's campus in a separate building. (Id. ¶¶20-21). There were no police officers around the building in which plaintiff's classroom was located. (Id. ¶26).

Sometime over the course of the day, plaintiff became aware that the campus was the subject of some type of threat; however, plaintiff remained unaware of any threat directed toward her, despite asking members of the school's administration. (Id. ¶¶21-26). In response to the threat, faculty members were told to secure their classrooms. (Id. ¶22). With respect to plaintiff's instructions, she was told not to cover the window in her classroom door, not to lock the door, and to draw the blinds to exterior windows. (Id.).

In the aftermath of the event, plaintiff had differing levels of interaction with defendants Lynch and Spencer, which gave rise to the instant claim. With regard to defendant Lynch, plaintiff first learned of the threat against her on October 19, 2010, when defendant Lynch showed plaintiff the Facebook post. (Id. ¶27). The student who made the threat against plaintiff was placed on a

3

three day suspension. (Id. ¶30). Thereafter, defendant Lynch insisted that plaintiff allow the student who had requested harm upon plaintiff to apologize and come back into plaintiff's classroom. (Id.). After the student served her suspension and plaintiff declined to allow the student to return to her class, the student was moved into a class across the hall from plaintiff's classroom. (Id. ¶27). The punishment given to the student who threated plaintiff was different than the punishment given to others who were involved in the incident. For example, the student who threatened defendant Lynch was transferred to another school for the remainder of the year, while the African American student who reported the threats was reported to police, arrested, and received a five day suspension. (Id. ¶30).

At a later meeting with school administrators regarding the incident, the school's assistant principal, Angela Garland, indicated plaintiff was not told of the threats against her because the administration was afraid she would communicate the nature of the threat to other teachers. (Id. ¶32). Defendant Lynch then told plaintiff that the African American student who reported the threats was the most blameworthy for the incident, as the white students involved were "playing a virtual game and . . . there was never a threat." (Id. ).

With respect to plaintiff's interactions with defendant Spencer, on October 20, 2010, defendant Spencer, in her capacity as superintendent of Onslow County Schools, came to Jacksonville High School to meet with the teachers at their monthly meeting. (Id. ¶28). While there, she thanked the faculty for how they handled the October 18, 2010, crisis. (Id.). However, defendant Spencer did not speak to or otherwise acknowledge plaintiff, despite plaintiff's safety being directly implicated by the threats. (Id.).

Plaintiff alleges that she was treated differently than a white employee of the school system, defendant Lynch, with regard to the measures taken to ensure her safety during the October 18, 2010, incident. (Id. ¶36).

As a result of the threats, plaintiff experienced sleeplessness, nervousness, heart palpations, sweating, chills, high blood pressure, and insomnia. (Id. ¶31). Beginning in December 2010, plaintiff's blood pressure and hearth palpitations increased to dangerously high levels. (Id. ¶35). As a result, plaintiff was out of work from December 2 through December 17, 2010. (Id. ¶34). During plaintiff's absence, she performed her job to the best of her ability, including providing lesson plans, grading papers, and preparing final exams. (See id.). In January 2011, plaintiff's doctor cleared her to return to work with one restriction, "no prolonged standing." (Id. ¶36). However, at that time, defendants did not allow plaintiff to return to work, despite the fact that "others ha[d] been allowed to return to work with more serious limitations." (Id.).

## DISCUSSION

A.      Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); see also Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the

5

pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556.

Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679). In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. at 255 (citations omitted).

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.      Analysis

Defendants contend that the magistrate judge erred in concluding that plaintiff had sufficiently alleged a prima facie case for discrimination under 42 U.S.C. §§ 1981 & 1983.

6

Specifically, defendants argue that plaintiff has not alleged a sufficient causal nexus between defendants purported discriminatory conduct and the adverse employment action she suffered. Defendants' objection must be granted, and thus, the court departs from the M&R.

As a preliminary matter, plaintiff's §§ 1981 and 1983 claims effectively merge for purpose of the court's analysis. See Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004). Thus, to succeed on her claim under §§ 1981 & 1983, plaintiff must demonstrate: 1) she was a member of a protected class; 2) she suffered an adverse employment action; 3) she was performing her job in a manner that satisfied her employer's legitimate expectations; and 4) that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination. Dugan v. Albemarle Cnty. Sch. Bd., 293 F.3d 716, 720-21 (4th Cir. 2002); see also EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 n.2 (4th Cir. 2001). Defendants' objection addresses the fourth element, existence of circumstances which give rise to an inference of discrimination.

The court first addresses the precise nature of the adverse employment action suffered by plaintiff. Plaintiff suggests she suffered an adverse employment action on October 18, 2010, when "her life was threatened by one of her students and she was never informed." (DE 33, at 4). Plaintiff suffered no adverse employment action stemming from the October 18, 2010, incident. An adverse employment action requires a tangible, negative effect on plaintiff's "compensation, job title, level of responsibility, or opportunity for promotion." Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007). The mere fact plaintiff was not informed of the threats made against her is not an adverse employment action. While it may have made plaintiff's job "less appealing," id., none of defendants' actions were "ultimate employment decision[s]," as contemplated by the case law.

7

Page v. Bogler, 645 F.2d 227, 231 (4th Cir. 1981). Thus, plaintiff suffered no adverse employment action stemming from the October 18, 2010, incident.

In any event, plaintiff has also alleged she was discriminated against on the basis of race when she was prevented from returning to work after a period of disability leave in January 2011. The M&R concluded that defendants' refusal to allow plaintiff to return to work constituted an adverse employment action. However, as noted, an adverse employment action alone is insufficient to state a claim for relief under §§ 1981 and 1983. Such adverse employment action must occur "under circumstances which give rise to an inference of unlawful discrimination." Dugan, 293 F.3d at 720-21. It is at this juncture that the court departs from the M&R.

Defendants' alleged refusal to allow plaintiff to return to work in January 2011 did not occur "under circumstances which give rise to an inference of unlawful discrimination." Plaintiff alleges no facts surrounding defendants' January 2011, refusal to allow her to return to work to suggest race was a motivating factor in the decision. Moreover, plaintiff provides no indication that defendants would have treated a white employee differently. See Farrar v. Dorothea Dix Hosp., 829 F. Supp. 140, 147 (E.D.N.C. 1993) (noting a plaintiff may establish a prima facie case of discrimination by pointing to different treatment of a similarly situated employee not in the protected class); see also Lightener v. City of Wilmington, N.C., 545 F.3d 260, 264-65 (4th Cir. 2008) (same). Instead, plaintiff merely alleges that "others" were allowed to return to work in similar circumstances. (Compl. ¶36). This vague allegation does nothing to bolster plaintiff's race discrimination claim. Accordingly, as plaintiff has not stated sufficient facts to give rise to the inference that defendants'

8

adverse employment action was the result of unlawful discrimination, defendants' objection must be sustained. Plaintiff's §§ 1981 & 1983 claims against all defendants must be dismissed.[1]

## CONCLUSION

Upon *de novo* review of those portions to the M&R to which objections were raised, and upon considered review of those portions to which no such objection has been filed, for the reasons given, the court declines to adopt the recommendation of the magistrate judge, (DE 29), as it relates to plaintiff's §§ 1981 and 1983 claim. For the reasons stated herein, defendants' motion to dismiss (DE 22) is GRANTED. Plaintiff's §§ 1981 & 1983 claims are DISMISSED WITHOUT PREJUDICE. Also, plaintiff's IIED claim is DISMISSED WITHOUT PREJUDICE. The court adopts the M&R in all other respects. The clerk is DIRECTED to close this case.

SO ORDERED, this the 12th day of January, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[1] Although plaintiff filed an objection to the M&R, the court declines to address it, as the court's resolution of defendants' objection renders it moot.