IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:13-CV-224-FL

| | |
|---|---|
| CARMEN SWASO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| ONSLOW COUNTY BOARD OF ) | ORDER |
| EDUCATION; PAMELA THOMAS, in her ) | |
| individual and official capacity; DR. ) | |
| KATHY SPENCER, Superintendent ) | |
| Onslow County Schools, in her individual ) | |
| and official capacity, and DR. DONNA ) | |
| LYNCH, in her individual and official ) | |
| capacity, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on defendants' motion to dismiss plaintiff's second amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (DE 44). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, defendants' motion is granted.

**BACKGROUND**

Plaintiff initiated this action on October 16, 2013, against twelve defendants: (1) Onslow County Board of Education ("BOE"); (2) Pamela Thomas ("Thomas"); (3) Dr. Donna Lynch ("Lynch"); (4) Fred Holt; (5) Margaret Brown; (6) Brock Ridge; (7) Jeffrey Brown; (8) Lina Padgett-Parker, (9) Ronnie Ross; (10) Mary Ann Sharpe; (11) Earl Taylor; and (12) Paul Wiggens.

(DE 1). Plaintiff asserted claims against defendants for violation of 42 U.S.C. §§ 1981 and 1983, on the basis that defendants discriminated against plaintiff in the terms and conditions of her employment because of race, and violation of North Carolina state law, on the basis that defendants intentionally inflicted emotional distress upon plaintiff. On November 1, 2013, plaintiff filed her first amended complaint (DE 8), adding defendant Dr. Kathy Spencer ("Spencer").

Thereafter, defendants BOE, Thomas, Spencer, and Lynch filed a motion to dismiss plaintiff's first amended complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[1] (DE 22). The motion was referred to United States Magistrate Judge Robert B. Jones, Jr., who entered a memorandum and recommendation ("M&R"), recommending that defendants' motion to dismiss be granted in part and denied in part. (DE 29). On January 13, 2015, this court entered an order dismissing plaintiff's first amended complaint. (DE 34). Thereafter, plaintiff filed an appeal to the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit dismissed plaintiff's appeal for lack of jurisdiction and remanded the case to this court with instructions to allow plaintiff to amend her complaint. (DE 39).

On March 4, 2016, plaintiff filed a second amended complaint asserting claims against four of the original defendants: (1) BOE; (2) Thomas; (3) Spencer; and (4) Lynch. (DE 42). The second amended complaint, the operative pleading in this matter, alleges that the above-captioned defendants violated §§ 1981 and 1983, on the basis that they discriminated against plaintiff in her employment because of race. Plaintiff seeks compensatory damages, injunctive relief, attorney fees, trial by jury, and any other relief the court may deem just and proper.

---

[1] At the time this motion was made, the other named defendants had not been served. In that motion, defendants BOE, Thomas, Spencer, and Lynch also sought dismissal of all claims against the remaining unserved defendants pursuant to Rules 12(b)(2) and 12(b)(5).

On April 4, 2016, defendants filed the instant motion to dismiss in lieu of an answer, seeking dismissal of plaintiff's second amended complaint pursuant to Rule 12(b)(6). (DE 44). Defendants contend that plaintiff's second amended complaint should be dismissed because the allegations set forth therein fail to state a claim for race discrimination under §§ 1981 and 1983. Plaintiff maintains that her claims are sufficient to withstand judicial scrutiny under Rule 12(b)(6).

## STATEMENT OF FACTS

As pertinent to the instant motion, the facts alleged in plaintiff's second amended complaint may be summarized as follows. Plaintiff is a "Hispanic African American" and was employed by defendant BOE as a Spanish teacher at Jacksonville High School. (2d Am. Compl. ¶¶ 1, 6). At all times relevant to this action, defendant Thomas was a member of the BOE, defendant Spencer was Superintendent of the Onslow County School System, and defendant Lynch was Principal of Jacksonville High School. (Id. ¶¶ 3–5). While employed by defendant BOE, plaintiff performed her duties in a satisfactory manner. (Id. ¶ 7).

On October 17, 2010, a white male Jacksonville High School student posted a threat against defendant Lynch on Facebook. (Id. ¶ 8). In response to that threat, a white female student commented, "Make sure you shoot Ms. Swaso." (Id.). At the time the comment was made, the female student was enrolled in one of plaintiff's classes. (Id. ¶ 19). Defendant Lynch learned of the threats against both herself and plaintiff on October 17, 2010, when an African American student reported them to another student. (Id. ¶ 10). Although never carried out, the threatened actions were supposed to occur on October 18, 2010. (Id. ¶ 11).

Plaintiff arrived at work on October 18, unaware of the threats made against her or defendant Lynch. (Id. ¶ 9). Upon her arrival, plaintiff noticed police presence near the front of the school's

3

campus as well as in and around the school office and cafeteria. (Id. ¶¶ 12, 18). Plaintiff checked into the main office and thereafter proceeded to her classroom, located on the far end of the school's campus about a quarter of a mile away. (Id. ¶¶ 13, 18). Throughout the day, no police were present in or around the building in which plaintiff's classroom was located. (Id. ¶ 18).

During the course of the day, some faculty members were told to secure their classrooms. (Id. ¶ 14). Plaintiff was instructed to close her blinds, but also to leave her window uncovered and her classroom door unlocked. (Id.). When plaintiff questioned school administration about these security instructions, she was not informed about the threats made against her or defendant Lynch. (Id. ¶ 16). Plaintiff only learned of the threats when defendant Lynch showed her the Facebook posts on October 19, 2010. (Id. ¶ 18).

Following the October 18, 2010, events, defendant Lynch disciplined the students involved. (Id. ¶ 22). The white male student who made the threat against defendant Lynch was reassigned to a different school for the remainder of the school year. (Id.). The white female student who made the threat against plaintiff was given a three day suspension. (Id.). The African American student who reported the threats was reported to the police, arrested, and given a five day suspension. (Id.)

On October 20, 2010, defendant Spencer, in her capacity as Superintendent of Onslow County Schools, visited Jacksonville High School for a monthly faculty meeting. (Id. ¶ 20). During her visit, defendant Spencer thanked faculty for their management of the October 18 events. (Id.). At this time, defendant Spencer did not acknowledge or otherwise speak to plaintiff, despite the fact that plaintiff's safety was directly implicated by the threats. (Id.). On October 21, 2010, defendant Lynch spoke with plaintiff and suggested that plaintiff allow the student who threatened her to apologize and return to plaintiff's class. (Id. ¶ 21). Plaintiff refused defendant Lynch's request and

4

the student was reassigned to a classroom across the hall. (Id.).

As a result of the October events, plaintiff began to experience nervousness, heart palpitations, sweating, chills, high blood pressure, and insomnia. (Id. ¶ 23). In late October, plaintiff consulted a physician and took a two-day leave of absence from teaching. (Id.). Beginning in December 2010, plaintiff's blood pressure and heart palpitations worsened. (Id. ¶ 26). As a result of her worsened condition, plaintiff took a medical leave of absence from December 2, 2010, to December 17, 2010. (Id.). While on leave, plaintiff remained in communication with the substitute teacher and continued to develop lesson plans, grade papers, and prepare quizzes and exams for her class. (Id.). In January 2011, plaintiff's doctor cleared her to return to work subject to one work restriction, "no prolonged standing." (Id. ¶ 27). Defendants rejected plaintiff's request to return, despite the fact that defendant "Lynch had allowed several white teachers to return to work from medical leave, some of whom had more serious health conditions than the [p]laintiff and some of whom had more restrictions." (Id. ¶ 37).

## DISCUSSION

A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To meet this standard, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but

5

does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.    Analysis

Defendants contend that plaintiff has not sufficiently alleged a prima facie case for discrimination under §§ 1981 and 1983.

As a preliminary matter, the framework for evaluating employment discrimination claims under §§ 1981 and 1983 is identical to the framework for evaluating such claims under Title VII. See Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004). Consequently, plaintiff's §§ 1981 and 1983 claims effectively merge for the purpose of the court's analysis. See id.

There are two primary ways a plaintiff may show, and a court may find, liability for employment discrimination under §§ 1981 and 1983. First, a plaintiff may allege direct or indirect evidence of employment discrimination. Coleman v. Md. Ct. of App. 626 F.3d 288, 295 (4th Cir. 2010). Second, absent such direct or indirect evidence, a plaintiff can establish employment discrimination through application of the burden shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

To establish a prima facie case for employment discrimination under McDonnell Douglas, a plaintiff must allege: (1) she was a member of the protected class; (2) she suffered an adverse employment action; (3) she was performing her job in a manner that satisfied her employer's legitimate expectations; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. Dugan v. Albemarle Cnty. Sch. Bd., 293 F.3d

6

716, 720–21 (4th Cir. 2002); see also EEOC v. Sears Roebuck & Co. 243 F.3d 846, 851 n.2 (4th Cir. 2001). Since plaintiff's second amended complaint fails to allege direct or indirect evidence of unlawful discrimination, plaintiff must allege sufficient facts to support a prima facie case under McDonnell Douglas.

Here, plaintiff provides two bases for her employment discrimination claim. First, plaintiff alleges that she was discriminated against with regard to the measures taken to ensure her security and safety on October 18, 2010. Second, plaintiff alleges that she was discriminated against on the basis of race when she was prevented from returning to work after a period of medical leave in January 2011.

Defendants first argue that any claim for relief based upon the events of October 18, 2010, must be dismissed because plaintiff fails to allege any adverse employment action stemming from those events. Plaintiff suggests that defendants' failure to inform her of the threat made against her and failure to provide her protection constitutes adverse employment action. (Id. ¶ 30). In addition, plaintiff suggests that she suffered adverse employment action when defendants allowed the female student who made the threats against her to remain enrolled at Jacksonville High School following the events of October 18. (Id. ¶ 32).

With regard to the events surrounding October 18, plaintiff suffered no adverse employment action. As previously noted by this court, an adverse employment action requires a tangible, negative effect on plaintiff's " 'compensation, job title, level of responsibility, or opportunity for promotion.' " Swaso v. Onslow Cty. Bd. of Educ., No. 7:13-CV-224-FL, 2015 WL 163060, at *4 (E.D.N.C. Jan. 13, 2015) (quoting Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007)). Defendants' failure to provide plaintiff police protection and inform her of threats made

7

against her does not result in a tangible, negative effect on her compensation, job duties, or opportunity for promotion. While defendants' actions may make plaintiff's job less appealing, they do not amount to an "ultimate employment decision," as contemplated by case law. Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981).

Plaintiff argues that she was constructively discharged and therefore did suffer adverse employment action. Specifically plaintiff argues that defendants' failure to inform her of the threat and defendants' decision to place the offending student across the hall from plaintiff's classroom created intolerable conditions such that plaintiff was constructively discharged.

A constructive discharge can amount to adverse employment action. See James v. Booz-Allen & Hamilton Inc., 368 F.3d 371, 378 (4th Cir. 2004). To succeed under a theory of constructive discharge, however, plaintiff must show that defendants "deliberately ma[de] [plaintiff's] working conditions intolerable in an effort to induce [her] to quit." Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1354 (4th Cir. 1995). (internal quotations omitted). Plaintiff must also show that she "actually resigned." Green v. Brennan, 136 S. Ct. 1769, 1777 (2016).

Here, plaintiff claims that defendants' actions surrounding the October 18 events created intolerable conditions. However, plaintiff alleges no fact indicating that defendants actions were "deliberately made . . . to induce her to quit." Martin, 48 F.3d at 1354. Plaintiff also fails to allege any fact indicating that she resigned as a result of the October 18 events. After the October 18 incident, plaintiff continued to work for defendant BOE. In December 2010 plaintiff took a medical leave of absence. Although absent from the classroom during that time, plaintiff continued to work for defendant BOE, preparing lesson plans and grading papers remotely. In January 2011, plaintiff requested permission to return to work with one work restriction. Plaintiff's request was denied.

8

Even if plaintiff resigned after defendants denied her request to return to work, no facts indicate that such resignation was the result of defendants' failure to inform plaintiff of threats made against her or defendants' decision to move the offending student to a classroom across the hall from plaintiff.[2]

In the alternative, plaintiff argues that defendants' denial of a safe working environment constitutes an adverse employment action. To support her position, plaintiff relies on Gerner v. County of Chesterfield, 674 F.3d 264 (4th Cir. 2012). In Gerner, the Fourth Circuit held that "discriminatory denial of a non-contractual employment benefit [may] constitute[] an adverse employment action." Id. at 267. However, Gerner does not eliminate the requirement that an adverse action have a tangible, negative effect on plaintiff's "compensation, job title, level of responsibility, or opportunity for promotion." Page, 645 F.2d at 233. Accordingly, plaintiff would still have to allege that the denial of the non-contractual benefit (safe working environment) tangibly and negatively affected her "compensation, job title, level of responsibility or opportunity for promotion." Id. Here, plaintiff makes no such allegation. Accordingly, plaintiff has suffered no adverse employment action stemming from the events surrounding October 18 and therefore, any claims predicated on defendants' actions relating to such events must be dismissed.

Next, with respect to defendant Lynch's refusal to allow plaintiff to return to work, defendants contend that plaintiff has failed to "show that [defendant] Lynch's refusal to accommodate her restrictions occurred under circumstances which give rise to an inference of discrimination." (DE 45). Specifically, defendants contend that plaintiff has failed to "demonstrate that similarly situated employees were not treated equally." (DE 45).

On the facts alleged, it is uncontested that plaintiff, a "Hispanic African American," is a

---

[2]It is unclear from the face of the complaint whether or not plaintiff resigned after defendant Lynch denied her request to return to work in January 2011.

9

member of a protected class. (2d Am. Compl. ¶ 1). It is also uncontested that at all relevant times, plaintiff performed her job in a satisfactory manner. (Id. ¶ 7). Additionally, as this court previously noted, defendants' failure to allow plaintiff to return to work does constitute adverse employment action. See Swaso v. Onslow Cty. Bd. of Educ., No. 7:13-CV-224-FL, 2015 WL 163060, at *5 (E.D.N.C. Jan. 13, 2015). However, these three elements alone are insufficient to state a claim for relief under §§ 1981 and 1983. To survive a motion to dismiss, plaintiff must also allege that the adverse action taken occurred under "circumstances giving rise to an inference of unlawful discrimination." Dugan, 293 F.3d at 721.

Here, defendants' refusal to allow plaintiff to return to work in January 2011 did not occur under alleged "circumstances giving rise to an inference of unlawful discrimination." Dugan, 293 F.3d at 721. Specifically, plaintiff has alleged no facts suggesting that race was a factor in defendant Lynch's decision to deny plaintiff's request to return to work in January 2011.

Plaintiff suggests that defendant Lynch's accommodation of medical work restrictions for similarly situated white employees gives rise to such an inference. To successfully allege a claim of employment discrimination, however, plaintiff must assert facts that plaintiff and other employees "were actually similarly situated or that race was the true basis for [the adverse action taken]." Coleman, 626 F.3d at 191. "Absent such support, the complaint's allegations of race discrimination do not rise above speculation." Id. To be similarly situated, the employees must be similarly situated in all respects. Lightner, 545 F.3d at 265. While plaintiff does not have to provide extensive factual details to survive a motion to dismiss, the similarity between the comparators and plaintiff must be "clearly established." Id. (citing Moore v. Charlotte, 754 F.2d 1100, 1106 (4th Cir. 1985)).

10

In her second amended complaint, plaintiff alleges that defendant "Lynch had allowed several white teachers to return to work from medical leave, some of whom had more serious health conditions than the [p]laintiff and some of whom had more restrictions." (Id. ¶ 37). While plaintiff does state that teachers outside of her protected class were allowed to return to work after medical leave, she fails to allege that those teachers were subject to similar restrictions and accommodations as her. Plaintiff's allegations that some of these teachers had "more serious health conditions," and "more restrictions" are insufficient. Even if other teachers were subject to a greater number of restrictions, without facts indicating that those restrictions were the same type as plaintiff's, the court can not infer that plaintiff was "actually similarly situated" to the comparators she cites. Coleman, 626 F.3d at 191. Consequently, the "allegations of race discrimination [contained in plaintiff's complaint] do not rise above speculation." Id.

Plaintiff also alleges that "[s]ome white employees who had standing restrictions similar to [her] were allowed to return to work." (2d Am. Compl. ¶ 37). However, this allegation is also insufficient. Without further factual enhancement showing that such employees were teachers with job responsibilities similar to plaintiff, this allegation fails to show that these comparators were "actually similarly situated" to plaintiff. Coleman, 626 F.3d at 191. As a result, this allegation fails to give rise to the inference that defendants' refusal to accommodate plaintiff occurred under discriminatory circumstances. Therefore, any claims predicated on defendant Lynch's refusal to let plaintiff return to work in January 2011 must also be dismissed for failure to state a claim.

Plaintiff suggests that it is sufficient to allege that white employees similarly situated to her were treated differently, citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) to support her position. While plaintiff need not allege all evidence used to establish her case at the pleading stage

11

of litigation, she still must allege sufficient factual material to raise her claim above the speculative level. See Twombly, 550 U.S. at 555. For example, as noted above, plaintiff fails to allege any facts showing that other employees in teaching positions had similar restrictions to her no-standing restriction. Plaintiff need not allege specific names or medical conditions to meet this minimal standard.

Having determined that plaintiff's factual allegations do not establish a prima facie case for race discrimination under §§ 1981 and 1983, the court must dismiss plaintiff's second amended complaint without prejudice.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion to dismiss. (DE 44). Plaintiffs' second amended complaint is DISMISSED without prejudice for failure to state a claim upon which relief can be granted. The clerk is DIRECTED to close this case.

SO ORDERED, this the 25th day of October, 2016.

LOUISE W. FLANAGAN
United States District Judge